UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES REVOLINSKI,

       Plaintiff,

       v.                                            Case No. 08-C-1098

NATIONAL RAILROAD
PASSENGER CORPORATION
("AMTRAK"),

       Defendant.

## DECISION AND ORDER ON
## DEFENDANT'S MOTION TO DISMISS

### I. BACKGROUND

On December 16, 2008, the plaintiff, James Revolinski ("Revolinski"), who initially proceeded *pro se*, filed a complaint in this court naming National Railroad Passenger Corporation ("Amtrak") as the defendant. On March 26, 2009, Amtrak filed a motion to dismiss the plaintiff's complaint. The court denied Amtrak's motion in a July 9, 2009 decision and order. Thereafter, the plaintiff obtained counsel and filed an amended complaint on October 8, 2009. In his amended complaint, Revolinski alleges claims for relief under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA") (Count I); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA") (Count II); the Rehabilitation Act, 29 U.S.C. § 701 *et seq*. ("Rehabilitation Act") (Count III); 42 U.S.C. § 1981 (Count IV); the Railway Labor Act, 45 U.S.C. § 151 *et seq*. ("RLA") (Count V); and Agency law relating to his employment with and termination of employment by Amtrak (Count VI).

Revolinski states in his amended complaint that, at all times relevant to this action, he "suffered from disabilities as defined by 42 U.S.C. § 12102." (Pl.'s Am. Compl. ¶ 19.) Revolinski states in his amended complaint that, on or about June 2006, Revolinski was hired as an assistant conductor by Amtrak. (*Id.* ¶ 11.) After he completed his training, Revolinski was primarily assigned

to work on Amtrak's Hiawatha service between Milwaukee and Chicago. (*Id.*) During his time with Amtrak, some of Amtrak's managers "began making rude threatening, demeaning and inappropriate comments about Revolinski's age and disability status." (*Id.* ¶ 13.) Revolinski states that "[a]t the time of his employment, Revolinski suffered from obesity and gout and was 44-45 years of age." (*Id.*) Revolinski then states that "Revolinski's disability and age did not interfere with the performance of his duties." (*Id.* ¶ 14.)

Revolinski further states in his amended complaint that "[u]pon information and belief, Revolinski's termination occurred days before he would have been eligible for membership in the United Transportation Union and the protections afforded its members through the Railway Labor Act, 45 U.S.C. § 151, *et. seq.*" (*Id.* ¶ 17.)

On November 2, 2009, Amtrak filed a motion to dismiss Counts II through VI of the plaintiff's amended complaint. Amtrak's second motion to dismiss is now fully briefed and is ready resolution. For the reasons that follow, Amtrak's motion to dismiss will be granted in part and denied in part.

## II. STANDARD

A motion pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. For the purposes of a motion to dismiss, all factual allegations of the complaint are taken as true. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Eisen v. McCoy*, 146 F.3d 468, 470 (7th Cir. 1998). Such allegations must be viewed liberally and in the light most favorable to the plaintiff. *Harrel v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). A complaint must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). However, "[s]pecific facts are not

2
Case 2:08-cv-01098-WEC   Filed 04/16/10   Page 2 of 13   Document 39

necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S. Ct. at 1969. However, the court is not required to "ignore any facts alleged in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

## III. DISCUSSION

Amtrak's motion to dismiss states that Counts II through VI of Revolinski's amended complaint fail to state a claim upon which relief can be granted. More specifically, Amtrak states that Revolinski has failed to establish a prima facie case of disability under both the ADA and Rehabilitation Act. Amtrak further asserts that Revolinski's claim under § 1981 fails because that statute does not provide a remedy for age or disability discrimination. With respect to Revolinski's RLA claim, Amtrak asserts that Revolinski's complaint fails to state a claim because Revolinski has not alleged that Amtrak interfered with his right, as an employee, to organize or join a union or that it retaliated against Revolinski for doing so. Finally, Amtrak asserts that Revolinski's agency claim does not state a claim upon which relief can be granted because, while "agency may result in liability for employee actions being imposed on an employer . . . [agency] is not itself a cause of action." The court will address each of Amtrak's arguments in turn.

*ADA & Rehabilitation Act Claims*

Before addressing the parties' arguments, I note that the parties agree that the ADA and the Rehabilitation Act standards are, for purposes of Amtrak's motion, one and the same. *See Jackson v. City of Chicago*, 414 F.3d 806, 811 fn. 2 (7th Cir. 2005).

At the outset, the parties dispute whether an amendment to the ADA, entitled the Americans with Disabilities Amendments Act (ADAA), which took effect on January 1, 2009, applies retroactively to the plaintiff's ADA claim. The parties have not presented the court with a Seventh Circuit decision expressly addressing whether the newly amended ADA applies retroactively. That having been said, Amtrak is correct that a number of other circuits have considered the issue and have explicitly held that the ADAA amendments to the ADA do not apply retroactively. *See Lytes v. DC Water & Sewer Authority*, 572 F.3d 936, 940 (D.C. Cir. 2009) ("By delaying the effective date of the ADAA, Congress clearly indicated the statute would apply only from January 1, 2009 forward."); *EEOC v. Agro Distrib. LLC*, 555 F.3d 462, 470 n.8 (5th Cir. 2009); *Milholland v. Summer County Board of Ed.*, 569 F.3d 562, 565 (6th Cir. 2009). And, to the extent the Seventh Circuit has addressed the issue, it has not shied from applying the pre-amendment version of the ADA to plaintiffs' suits involving causes of action that accrued before January 1, 2009. *See Winsley v. Cook County*, 563 F.3d 598, 600 fn. 1 (7th Cir. 2009); *Kiesewetter v. Caterpillar Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008).

As Amtrak notes, the claims made in Revolinski's amended complaint arose in 2006. This was long before the ADAA changes to the ADA took effect. Given the foregoing, I am satisfied that Revolinski's claims are governed by the pre-amendment version of the ADA.

4

Amtrak's motion to dismiss Revolinski's ADA and Rehabilitation Act claims is predicated on Amtrak's assertion that Revolinski has not properly pled a prima facie case of discrimination under either Act. The crux of Amtrak's argument with respect to Revolinski's ADA and Rehabilitation Act claims is that Revolinski's mere allegation that he suffered from obesity and gout is insufficient to state a claim under either Act. The parties agree that obesity may be considered a disability for purposes of the Acts in the "rare case[ ] where the obesity is caused by a physiological disorder." *Zarek v. Argonne Nat'l Lab.*, No. 07C6964, 1998 U.S. Dist. LEXIS 13444, at * 9-10 (N.D. Ill. August 27, 1998) (citing *Francis v. City of Meriden*, 129 F.3d 281, 286 (2d Cir. 1997)); *see also Clemons v. The Big Ten Conference*, No. 96C0124, 1997 U.S. Dist. LEXIS 1939, at *15-21 (N.D. Ill. Feb. 24, 1997). Based on the above, Amtrak asserts the following: (1) Revolinski has failed to allege that his obesity is caused by a physiological disorder; (2) Revolinski has not alleged that his obesity substantially limited any major life activity; (3) Revolinski has not averred that Amtrak regarded his obesity as a disability. As for Revolinski's claim with respect to his gout, Amtrak states that Revolinski has not established that his gout constitutes a disability under the ADA or the Rehabilitation Act.

A prima facie case of discrimination under either Act would require Revolinski to establish, in pertinent part, the following: (1) Revolinski suffers from a disability as defined by the applicable statute; (2) Revolinski is otherwise qualified to perform his job; (3) Revolinski was discharged because of his disability. *See Scheerer v. Potter*, 443 F.3d 916, 918 (7th Cir. 2006). Under the ADA, disability is defined as follows: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being

regarded as having such an impairment." 42 U.S.C. § 12102(1). The Rehabilitation Act definition of this standard is substantially similar. 45 C.F.R. § 84.3(j).

Amtrak cites to the Seventh Circuit's opinion in *Scheerer* for its recitation of what elements a plaintiff must establish as part of a prima facie claim of discrimination. Yet *Scheerer* involved a decision and order rendered on a summary judgment motion. Needless to say, a court employs vastly different standards when considering a motion to dismiss as opposed to a motion for summary judgment. The issue that Amtrak's briefs do not address is the extent to which a plaintiff must plead a prima facie case of discrimination under the ADA and the Rehabilitation Act in order to survive a motion to dismiss. Indeed, the larger question implicated by Amtrak's briefs—what must a plaintiff plead in order to state a claim upon which relief can be granted—is currently the source of a great deal of confusion in the courts. *See Riley v. Vilsack*, 665 F. Supp. 2d 994, 1009 (W.D. Wis. 2009) ("The problem is that *Iqbal* and *Twombley* contain few guidelines to help lower courts discern the difference between a 'plausible' and an implausible claim and a 'conclusion' from a 'detailed fact.'"); *Wade v. Morton Bldgs., Inc.*, No. 09-1225, 2010 WL 378508, *4 (C.D. Ill. Jan. 27, 2010) ("Reciting the general standards in *Iqbal*, *Bell Atlantic* and Seventh Circuit precedent is simple, but the application of those standards to the particular allegations here is not so simple."); Hon. Colleen McMahon, *The Law of Unintended Consequences: Shockwaves in the Lower Courts*, 41 Suffolk U.L. Rev. 851, 853 (2008) ("We district court judges suddenly and unexpectedly find ourselves puzzled over something we thought we knew how to do with our eyes closed: dispose of a motion to dismiss a case for failure to state a claim."); Andrew Blair-Stanek, *Twombly is the Logical Extension of the Matthews v. Eldridge Test to Discovery*, 62 Fla. L. Rev. 1, 3 (2010) ("The *Twombly* decision has thrown lower courts into confusion, making it unclear how to evaluate motions to dismiss under the Federal Rules

6

of Civil Procedure and their state analogs."); Stephen B. Burbank, *The Continuing Evolution of Securities Class Actions Symposium: Pleading and the Dilemmas of "General Rules"*, 2009 Wis. L. Rev. 535, 547 (2009) ("The courts of appeals have struggled to determine *Twombly's* precise meaning and scope of application, and their efforts have resulted in different approaches.").

In my opinion, Revolinski need not plead all of the elements of a prima facie case of discrimination under the ADA and the Rehabilitation Acts in order to survive a motion to dismiss. As the Supreme Court stated in the context of a discrimination suit, "[t]he prima facie case . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2003). In coming to this conclusion, the Court in *Swierkiewicz* incorporated the Court's previous holding in *Conley v. Gibson* that " a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While the Court's decision in *Twombly*, 127 S. Ct. at 1968-69, abrogated the *Conley* holding, it does not appear that courts have required a plaintiff to plead a prima facie case of discrimination under the ADA or the Rehabilitation Acts as Amtrak's briefs appear to suggest. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) ("Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted)). *See also Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) ("A plaintiff still must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief."); *EEOC v. Concentra Health Servs.*, 496 F.3d 773,

7

781 (7th Cir. 2007) ("We have stated that a plaintiff alleging employment discrimination on the basis of race, sex or some other factor governed by 42 U.S.C. § 2000e-2 may allege the defendant's intent quite generally: 'I was turned down for a job because of my race' is all a complaint has to say.") (internal quotations omitted)). Based on the foregoing, I am satisfied that Revolinski's pleadings need not recite all of the elements of a prima facie case of discrimination under the ADA or the Rehabilitation Act in order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

This is not to say that Revolinski is home free. While not in the ADA or the Rehabilitation Act context, the Seventh Circuit addressed the pleading requirements for a plaintiff proceeding under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, in *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008). Specifically, in *Tamayo*, the court applied the *Twombly* holding in an employment discrimination context. 526 F.3d at 1082-83. In explaining post-*Twombly* pleading standards, the court stated, in pertinent part, as follows:

> First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court.

526 F.3d at 1084 (quoting *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773 (7th Cir. 2007)). In applying this standard, the court stated that "'[i]f discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim." *Tamayo,* 526 F.3d at 1083 (quoting *Limestone Dev. Corp. v. Vill. of Lement, Ill.*, 520 F.3d 797, 2008 WL 852586, at *5 (7th Cir. 2008)). At least one commentator has referred to the Seventh Circuit's decision in *Tamayo* as setting forth "a standard that requires greater particularity in light of the burdens of discovery in complex

litigation . . . ." Stephen B. Burbank, *The Continuing Evolution of Securities Class Actions Symposium: Pleading and the Dilemmas of "General Rules"*, 2009 Wis. L. Rev. 535, 548 (2009).

Revolinski contends that the law is not settled with respect to whether obesity or gout constitutes a disability under the Acts. Revolinski further states that "the first amended complaint [ ] state[s] that Pescevich and Hinton, agents of Defendant Amtrak, made rude, threatening, inappropriate and demeaning comments about Plaintiff's weight and disabilities." (Pl.'s Br. Opp. at 5.) Based on the above, Revolinski states that he "has demonstrated sufficient facts to permit a fact finder to infer from such behavior that Amtrak regarded Revolinski as having an impairment." (*Id.*)

I believe that Revolinski's amended complaint crosses the threshold for plausibility as set forth by the court in *Twombly*. At the outset, a complaint involving a single plaintiff alleging discrimination by a single defendant does not, at first glance, implicate an overbearing amount of discovery. And so, I believe that this is not the type of case envisioned by *Tamayo* that would require an unusually costly discovery process thereby requiring a more factually detailed complaint. As for the contents of Revolinski's amended complaint, Revolinski alleges in pertinent part as follows: (1) he has a disability as defined by the ADA and the Rehabilitation Act; (2) his managers at Amtrak targeted him with rude, threatening, demeaning and inappropriate comments about, among other things, his disability status; (3) these same managers engaged in a course of conduct—such as making false accusations against Revolinski—designed to force Revolinski to quit or otherwise lose his employment; (4) Revolinski's employment with Amtrak was terminated shortly after these events. To be sure, this is a far cry from a prima facie case of discrimination, which would require Revolinski to demonstrate, among other things, that his obesity and gout actually are disabilities under the ADA and the Rehabilitation Act. And this court agrees with Amtrak that Revolinski's amended complaint would benefit from a bit

9

more detail. But Revolinski's amended complaint does provide Amtrak with notice of his claims and it is sufficient to state claims under the ADA and the Rehabilitation Acts under the notice-pleading standard outlined in *Twombly* and *Tamayo*. Consequently, Amtrak's motion to dismiss Revolinski's claims under the ADA and the Rehabilitation Act will be denied.

*Section 1981 Claim*

Amtrak states that Revolinski's amended complaint "asserts that Amtrak discriminated against him on the basis of his age and alleged disabilities, but [he] presents no facts that would support a claim for race or alienage discrimination." (Def.'s Br. at 5.) As Amtrak notes, § 1981 claims are limited to discrimination based upon one's race or alienage. *See St. Louis v. Alverno College*, 744 F.2d 1314, 1317 (7th Cir. 1984) (citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976)). In response, Revolinski states that he "concurs with [Amtrak] that claims under 42 U.S.C. § 1981 are limited to race and alienage in the 7th Circuit and accordingly abandons such claims as being inapplicable in this case." (Pl.'s Br. Opp. at 8.) Based on the foregoing, Amtrak's motion to dismiss Revolinski's § 1981 claim will be granted.

*Railway Labor Act Claim*

Revolinski proceeds with his RLA claim under the Fourth Paragraph of the Railway Labor Act. Revolinski's amended complaint asserts with respect to his RLA claim that his termination occurred days before he would have been eligible for membership in the United Transportation Union and that the termination caused him to be ineligible for membership in the union. (Pl.'s Am. Compl. ¶¶ 17, 24.)

10

Case 2:08-cv-01098-WEC    Filed 04/16/10    Page 10 of 13    Document 39

Amtrak states that "[p]laintiff has not alleged that Amtrak interfered with his right, as an employee, to organize or join a union or that it retaliated against him for doing so."[1] (Def.'s Br. at 5.) Based on the above, Amtrak states that the allegations in Revolinski's amended complaint "are insufficient to invoke the very limited private right of action recognized under the RLA and should be dismissed." (*Id*. at 6.) Revolinski responds that he "respectfully submits that . . . a finder [of fact] could reasonably conclude that the mere act of terminating Revolinski on the eve of his membership eligibility is per se interference with his right to join [the union] or at a minimum, evidence of interference." (Pl.'s Br. Opp. at 9.)

In my opinion, Revolinski's complaint crosses the *Twombly* threshold—but barely so. Indeed, Amtrak's motion to dismiss raises serious concerns about the ultimate viability of Revolinski's RLA claim. Nevertheless, I am again satisfied that Revolinski's RLA claim provides Amtrak with notice of the claim that he is pursuing and plausibly suggests that Revolinski has a right to relief under the RLA.

*Agency Claim*

With respect to his agency claim, Revolinski's amended complaint asserts, in pertinent part, as follows:

> [Amtrak's managers] are or were agents and employees of Defendant Amtrak. All acts and omissions as set forth in this complaint were

---

[1] Amtrak's reply brief raises a number of additional arguments in support of its position that Revolinski's RLA claim should be dismissed. (*See* Def.'s Reply Br. at 5-7.) Among these additional arguments are Amtrak's contentions that Revolinski's claim fails to state a prima facie claim under the RLA and Revolinski's claim should be dismissed because it was not submitted to mandatory arbitration. (*Id.*) Because these arguments were raised for the first time in Amtrak's reply brief, the court considers them waived for purposes of this motion to dismiss. *See Michaels v. Mr. Heater Inc.*, 411 F. Supp. 2d 992, 995 (W.D. Wis. 2009) ("[A]rguments raised for the first time in a reply brief are waived." (citing *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998))).

11

> committed in the normal course of said individuals employment by
> Amtrak.
>
> Defendant Amtrak is responsible for the conduct, acts and omissions
> of its agents and employees.

(Pl.'s Am. Compl. ¶¶ 35, 36.)

In support of its motion to dismiss this claim, Amtrak asserts that "[i]n an employment case, agency may result in liability for employee actions being imposed on an employer, but is not itself a cause of action." (Def.'s Br. at 6.) Revolinski responds to this argument by stating that the Seventh Circuit "allows claims against principals for the actions of their agents." (Pl.'s Br. Opp. at 8.) More specifically, Revolinski cites to the Seventh Circuit's decision in *Rosenthal & Co. v. Commodity Futures Trading Com.*, 802 F.2d 963 (7th Cir. 1986).

I have reviewed the court's decision in *Rosenthal* and agree with Amtrak that the decision "simply recognized the agency principal and does not support Plaintiff's notion that 'agency' is an independent cause of action." (Def.'s Reply Br. at 8.) Indeed, the Seventh Circuit expressly recognized in *Rosenthal* that the agency theory of liability at issue in that case was a creature of statutory construction. 802 F.2d at 966-67. Moreover, Revolinski's amended complaint provides such sparse description of the facts surrounding Revolinski's agency claim that the complaint cannot fairly be said to notify Amtrak of the claim Revolinski is pursuing. In sum, Revolinski's amended complaint fails to state a claim for relief upon which relief can be granted with respect to his agency claim.

Given the foregoing, it will be ordered that Amtrak's motion to dismiss will be granted in part and denied in part.

12

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to dismiss be and hereby is **GRANTED** with respect to Counts IV and VI of the plaintiff's amended complaint;

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss be and hereby is **DENIED** with respect to Counts II, III, and V of the plaintiff's amended complaint.

**SO ORDERED** this 16th day of April 2010 at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge