# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JAMES REVOLINSKI,

        Plaintiff,

     v.                                  Case No. 08-C-1098

AMTRAK,

        Defendant.

## DECISION AND ORDER

## I.  BACKGROUND

On December 16, 2008, the plaintiff, James Revolinski ("Revolinski"), filed a complaint in this court naming National Railroad Passenger Corporation ("Amtrak") as the defendant.  In his complaint (later amended), Revolinski alleges that Amtrak implemented discriminatory practices.  Specifically, Revolinski claims that Amtrak fired him, unlawfully, based on his age and disability.  Revolinski seeks relief based on the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*., the Rehabilitation Act, 29 U.S.C. § 701, *et seq.,* and the Age Discrimination in Employment Act, ("ADEA") 29 U.S.C. § 621, *et seq*.  Alternatively, Revolinski alleges Amtrak's termination violated his right to organize and bargain collectively under the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq*.

On November 1, 2010, Amtrak filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, alleging that Revolinski's claims under the ADEA, ADA and RLA are time-barred by the applicable statutes of limitations.  Amtrak further argues that, even if Revolinski's claims are not time-barred, they fail as a matter of law.  Amtrak's motion is now fully briefed and is ready for resolution.

For the reasons that follow, Amtrak's motion will be granted.

## II. FACTS

Amtrak hired Revolinski on June 30, 2006 as an Assistant Conductor. (Defendant's Proposed Findings of Fact ("DPFOF") ¶ 6.) At the time of his hiring, Revolinski was forty-four years old and weighed about 426 pounds. (DPFOF ¶¶ 3-4.) Before beginning his work for Amtrak, Revolinski completed a medical history and physical examination. (DPFOF ¶ 7.) In completing this medical history, Revolinski disclosed that, other than high blood pressure, he had no other health conditions and did not identify any disabilities that would prevent him from performing the duties of an assistant conductor. (DPFOF ¶ 8-9, Pl.'s Resp. to DPFOF ¶ 9.) Revolinski knew of Amtrak's Non-Discrimination Policy during his employment with Amtrak. (DPFOF ¶ 13.) Amtrak stationed Revolinski in Milwaukee, Wisconsin, beginning in October 2006. (DPFOF ¶ 15.)

During his time as an assistant conductor, Revolinski assisted passengers, collected tickets, and ensured safe train operation. (DPFOF ¶ 22.) While with Amtrak, Revolinski served under Road Foreman Robert Werth ("Werth"), Assistant Superintendent Louis Pescevic ("Pescevic") and Road Operations Superintendent Travis Hinton ("Hinton"). (DPFOF ¶ 18.) Amtrak employed Revolinski as an "extra board" employee and he therefore did not work a set number of shifts per week; instead, he waited for Amtrak to call him into work. (DPFOF ¶¶ 24-27.) Amtrak disciplined Revolinski after a late train departure on November 28, 2006, and Revolinski admitted missing two days of work during his probationary period. (DPFOF ¶¶ 38-45; Pl.'s Resp. to DPFOF ¶ 47.) Due to his large stature, during substantial periods of his employment with Amtrak, Revolinski was unable to comply with Amtrak uniform guidelines. (DPFOF ¶¶ 53-56, 58-68, 70-71.) Amtrak's inability to provide Revolinski with properly fitting uniforms contributed to at least some of Revolinski's non-compliance with Amtrak

uniform standards.  (DPFOF ¶ 60, 66.)

On December 7, 2006, Amtrak denied Revolinski's application for continued employment. (DPFOF ¶ 75.)  Amtrak hires new employees under a probationary period and, after such a period, determines whether an employee will continue with the company by either accepting or denying an application for continued employment.  (DPFOF ¶¶ 16, 75.)  About one month after Amtrak denied Revolinski's application, Revolinski spoke to Pescevic about his termination.  (DPFOF ¶ 77.)  At this time, Pescevic informed Revolinski that a poor pattern of attendance contributed to Revolinski's termination, but did not provide further details.  (DPFOF ¶ 77.)  Pescevic's answer left Revolinski dissatisfied. (DPFOF ¶ 78.)

In the spring of 2007, Revolinski spoke with Keith Osbourne ("Osbourne") of Amtrak's Human Resource Department.  (DPFOF ¶ 82.)  In December of the same year, Revolinski met with then-superintendent Gary Israelson ("Israelson") about the possibility of reinstatement. (DPFOF ¶ 83.)  At this meeting, Amtrak disclosed the reasons for Revolinski's termination, which included the delayed train, missed work-days and violation of uniform standards. (DPFOF ¶ 83.) Because of these infractions, Israelson informed Revolinski of his ineligibility for reinstatement.  (DPFOF ¶ 83.)

On February 26, 2008, at Amtrak's direction, Revolinski contacted Amtrak's Dispute Resolution Office ("DRO").  (DPFOF ¶ 84.)  The DRO monitors compliance with and investigates violations of Amtrak's Non-Discrimination Policy.  (DPFOF ¶ 85.)  Revolinski met with Donald Harris ("Harris"), a DRO officer, sometime in the spring of 2008.  (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶ 23.) At this meeting, Harris repeated the same stated reasons for termination and told Revolinski he would attempt to help him get his job back.  (DPFOF ¶¶ 88-90, Pl.'s Resp. to DPFOF ¶ 90.)  Amtrak's DRO informed Revolinski this process would take ninety days; instead, Amtrak completed its investigation

eight months later, in November of 2008. (PPFOF ¶ 25.) Revolinski filed his charge with the EEOC on October 6, 2008. (DPFOF ¶ 90.)

## III. STANDARD OF REVIEW

A district court must grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note to 1963 amendment). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Twenhafel v. State Auto Prop. and Cas. Ins. Co.*, 581 F.3d 625, 630 (7th Cir. 2009). To state it differently, a party will be successful in opposing summary judgment only when they "present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004)

4

(citing *Salvadori v. Franklin Sch. Dist.*, 293 F.3d 989, 996 (7th Cir. 2002)).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'[I]n the light most favorable' . . . 'simply means that summary judgment is not appropriate if the court must make a choice of inferences.'" *Harley-Davidson Motor Co., Inc. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)). The evidence must create more than "some metaphysical doubt as to the material facts." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (quoting *Waukesha Foundry, Inc. v. Indus. Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996)). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## IV. DISCUSSION

Revolinski seeks relief under the ADA, the ADEA, the RLA, and the Rehabilitation Act. Amtrak asserts, however, that Revolinski's ADA, ADEA, and RLA claims are time-barred because Revolinski did not file a charge with the appropriate agency during the relevant statute of limitations period. It further asserts that all of Revolinski's claims fail as a matter of law. The court addresses each claim below.

## A. Revolinski's Claims Under the ADA and ADEA

Under the ADA and the ADEA, an employee is required to file an EEOC charge alleging disability and/or age discrimination within 300 days of the alleged violation in order to preserve his right to file suit. *See* 29 U.S.C. § 626(d); 42 U.S.C. § 12188(a)(1). The 300-day filing period for an EEOC charge begins to run when a plaintiff knows that he has been injured, not when he determines the injury to be unlawful. *See Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004). Based on Revolinski's December 7, 2006 termination, Revolinski was required to file a charge with the EEOC no later than October 7, 2007. Revolinski did not file a charge with the EEOC until sometime during the fall of 2008. Revolinski does not challenge this argument. Instead, Revolinski argues that his pre-filing attempts to determine the cause of termination trigger a tolling of the statute of limitations.

Statute of limitations periods under the ADEA and ADA are subject to tolling doctrines. "Tolling doctrines stop the statute of limitations from running even if the accrual date has passed." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). The two distinct forms of tolling relevant to REVOLINSKI's claims are the doctrines of equitable estoppel and equitable tolling.

### 1. Doctrine of Equitable Tolling

"To invoke equitable tolling, a plaintiff must show that 'he could not by the exercise of reasonable diligence have discovered essential information bearing on his claim.'" *Casteel v. Exec. Bd. of Local 703 of the Int'l Bhd. of Teamsters*, 272 F.3d 463, 467 (7th Cir. 2001) (quoting *Cada*, 920 F.2d at 452). If a plaintiff demonstrates that equitable tolling is appropriate in a given circumstance, "it is well-established that the limitations period is tolled until 'facts that would support a charge of discrimination . . . [are] apparent or should [be] apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 291 (7th Cir. 1986)

(quoting *Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 410–11 (7th Cir. 1984). "[Equitable] tolling does not provide a plaintiff with an automatic extension of indefinite duration; the plaintiff must file his charge with the EEOC within a reasonable period of time." *Hentosh v. Herman M. Finch Univ. of Health Sciences*, 167 F.3d 1170, 1175 (7th Cir. 1999).

Revolinski made substantial efforts to determine the reason behind his termination. These efforts included phone calls, e-mails and letters that Revolinski sent to Assistant Superintendent Pescevic ("Pescevic"), as well as filing a complaint with Amtrak's DRO. (DPFOF ¶¶ 77-90.) In between, Revolinski spoke to many Amtrak employees and worked diligently in order to obtain information regarding his termination. (DPFOF ¶¶ 82-39.) After filing a complaint with Amtrak's DRO, Revolinski waited approximately eight months for a decision on his reinstatement. (DPFOF ¶¶ 84, 90.) Before receiving the DRO's decision not to reinstate, Revolinski filed a charge with the EEOC in order to obtain a Right to Sue. (DPFOF ¶ 90.) Through his writings, phone calls and face-to-face meetings, Revolinski has certainly shown that he was diligent in trying to obtain information.

Next the court must determine whether Revolinski could have discovered essential information bearing on his claim through his effort. Equitable tolling does not postpone the statute of limitations until the plaintiff knows concretely that he has been discriminated against. *Cada*, 920 F.2d at 451. Instead "the limitations period begins to run when a reasonable person would believe he *may* have a cause of action." *See Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 268 (7th Cir. 1995). Under the ADEA and ADA a prospective plaintiff must file with an administrative agency, in part, to uncover relevant facts necessary for advancement of his case. *See Thelen,* 64 F.3d at 268 (quoting *Pachecho v. Rice,* 966 F.2d 904, 907 (5th Cir. 1992)). To file a charge with the EEOC, Revolinski, or a reasonable person similarly situated, need only suspect there may have been discrimination. *See Thelen,* 64 F.3d at 268. After a

reasonable person would believe that he may have been discriminated against, he must file a charge with the EEOC within a reasonable time. *See Hentosh,* 167 F.3d at 1174.

In order to have the essential information necessary for filing a charge with the EEOC, an employee need only know that (1) he was within a protected class; (2) he was qualified to continue his former job; (3) he was not allowed to continue his former job; and (4) his employer sought somebody to replace him. *See Vaught*, 745 F.2d at 411 (7th Cir. 1984). Revolinski need only be aware of minimal facts supporting an EEOC investigation, not enough facts sufficient for a complaint initiating a lawsuit. *See Vaught*, 745 F.2d at 411–12 (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68). *See also Sharp v. United Airlines, Inc.*, 236 F.3d 368, 373 (7th Cir. 2001) (plaintiff had enough information to file with EEOC where plaintiff knew that employer intended to renew its offer of reinstatement to other employees and not to plaintiff).

For example in *Stark v. Dynascan Corp.*, 902 F.2d 549, 552 (7th Cir. 1990), the plaintiff knew of his employer's discriminatory remarks aimed at the plaintiff, of younger employees not fired or demoted and of conflicting or unpersuasive reasons for his firing. The plaintiff filed his charge with the EEOC beyond the 300 day deadline, after learning that the defendant hired a significantly younger employee to fill his position. *Id.* at 551. The plaintiff argued that, until finding out about his replacement, he did not have enough information to demonstrate discrimination. *Id.* The court held that, even without knowledge of a younger replacement, the plaintiff had enough information to file a charge with the EEOC because an employee need not have conclusive proof or enough information for a prima facie case of discrimination. *Id.* at 552.

At the time of his termination, Revolinski knew: (1) he was over forty years old; (2) he suffered from gout; (3) he was obese; (4) he had no reason to expect to be terminated; (5) he was terminated; (6)

he had been a victim of discriminatory remarks; and (7) he was being replaced.  (DPFOF ¶¶ 3, 75, 94) (PPFOF ¶¶ 52-56.)  He maintained good relationships with customers and co-workers while working at Amtrak.  (Compl. ¶ 5.)  Similar to the plaintiff in *Stark*, Revolinski knew of discriminatory remarks aimed at him by his direct supervisor.  (PPFOF ¶¶ 48-62.)  He was also skeptical of Pescevic's stated reasons for his termination.  (DPFOF ¶ 78.)  Based on the facts presented, a reasonable person would have sufficient information to know of the possibility of discrimination, even if Revolinski may not have subjectively realized the potential for injury.  *See Vaught,* 745 F.2d at 411.  Therefore, Revolinski should have filed his charge no later than 300 days after his conversation with Pescevic, i.e. by November of 2007.

Additionally, in or around December of 2007, Amtrak provided Revolinski with more details surrounding his termination. (DPFOF ¶ 83.)  Amtrak informed Revolinski that his dismissal was based on the train delay which occurred during his shift, poor attendance and Uniform Standards Policy violations.  (DPFOF ¶ 83.)  Israelson and Anderson told Revolinski of his ineligibility for reinstatement at this time.  (DPFOF ¶ 83.)  Revolinski thought these reasons to be misguided and, at this point, had more than enough information to file his discrimination charge with the EEOC.  Certainly, by December of 2007, Revolinski had all essential information bearing on his claim necessary for filing a charge with the EEOC.  Instead, Revolinski filed a complaint with Amtrak's DRO roughly three months after suspecting Amtrak's stated reason for termination to be false.  (DPFOF ¶¶ 83-84.)  However, Revolinski did not file a charge with the EEOC until October 6, 2008, more than 300 days after having more than sufficient information to file his charge.

Even assuming December of 2007 to be the correct start of the filing period, Revolinski did not file his claim within a reasonable time.  Under the doctrine of equitable tolling, an individual does not

have an additional 300 days to file a charge with the EEOC, only a reasonable period of time. Courts in the Seventh Circuit have found that waiting ten months to file to be unreasonable. *See Thelen*, 64 F.3d at 268 (absent some justification for delay in filing, delays measured in months are unreasonable; employee could reasonably file complaint within a few days or weeks); s*ee also Hentosh*, 167 F.3d at 1175 (waiting eleven months to file after having all necessary information is unreasonable even if the employee is concurrently pursuing alternative remedies). Therefore, waiting roughly eight months after having sufficient information is not reasonable.

Even assuming that Revolinski did not discover the possibility of discrimination until May of 2008, Revolinski's claim is still time-barred. After Revolinski's meeting with DRO officer Harris, Mike Doyle ("Doyle") submitted a letter on behalf of Revolinski, dated May 18, 2008, discussing Revolinski's ability as a conductor and union-representative as well as Doyle's belief that Revolinski was a victim of discrimination. (Harris Dep. Ex. 13.) However, Revolinski still waited almost five months to file a charge with the EEOC. A reasonable time to file with the EEOC after having the limitations period tolled should be measured in weeks, not months. *See Thelen*, 64 F.3d at 268. Therefore, I conclude that Revolinski did not file his charge with the EEOC within a reasonable time.

Based on the above analysis, Revolinski has not met his burden of establishing the facts necessary to support a tolling of the limitations period on the basis of the doctrine of equitable tolling.

### 2. Doctrine of Equitable Estoppel

"[T]he doctrine of equitable estoppel, also known as fraudulent concealment, is available if the defendant takes active steps to prevent the plaintiff from suing in time." *Sharp*, 236 F.3d at 372 (internal quotations omitted). "The granting of equitable estoppel should be premised upon a showing of the plaintiff's actual and reasonable reliance on the defendant's conduct or representations and evidence of

improper purpose on the part of the defendant or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *Mull*, 784 F.2d at 292 (internal quotations omitted) (quoting *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981)). Equitable estoppel is available only if the time-barred filing was the result "either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge." *See Id.* (internal quotations omitted) (quoting *Price v. Litton Business Sys.*, *Inc.*, 694 F.2d 963, 965 (4th Cir. 1982)).

At least arguably, Revolinski may indeed have relied on Amtrak's conduct and representations in deciding not to file his EEOC charge right away. Although he did not fully trust the reasons provided for his termination, Revolinski relied on Amtrak's recommendations in guiding his search. Revolinski received notification of his termination on December 7, 2006, and immediately tried to determine the reasons behind his termination. Amtrak never provided Revolinski with an answer that satisfied him. Although Revolinski never accepted Amtrak's reasons for his termination, he did rely on the advice given by Amtrak employees. During the investigation, Revolinski spoke to management, Human Resources and the DRO, which were all reasonable sources of information. Based on the above facts, Revolinski could be said to have actually and reasonably relied on Amtrak's conduct in not filing a charge.

However, Revolinski must also demonstrate that Amtrak's conduct reflects an improper purpose or that Amtrak had actual or constructive knowledge of the deceptive nature of its conduct. In an attempt to meet the second element of the test, Revolinski asserts two instances that he claims evidences Amtrak's dishonesty.

First, Amtrak represented to Revolinski that it might reinstate Revolinski's employment, which it did not. However, the Seventh Circuit has long established that "an employer's attempts to lessen the

adverse impact of an employment decision will not as a matter of law serve to toll the limitations period." *See Mull*, 784 F.2d at 292. Similarly, an employee's hope for rehire, transfer, promotion, or a continuing employment relationship cannot toll the statute of limitations absent some conduct likely to mislead the employee into sleeping on his rights. *See Id.* (citing *Price*, 694 F.2d at 965-66). Therefore, this argument fails to support a conclusion that the filing period should be tolled on the basis of the doctrine of equitable estoppel.

Second, Revolinski alleges that Amtrak told him that the DRO investigation would take ninety days. (PPFOF ¶ 25.) Instead, the investigation took eight months to complete. (PPFOF ¶ 25.) For almost eight months, Revolinski claims that he relied on Amtrak's assertion that the investigation would take ninety days. Although Revolinski's reliance on Amtrak's assertion may have been actual, waiting almost three times as long as Amtrak's stated completion time before filing a charge is, in my opinion, unreasonable.

But, even if Revolinski's reliance on the DRO were reasonable, Amtrak's failure to complete the investigation within a timely fashion is not likely to mislead an employee into sleeping on his rights. A company's attempt to rehire only implicates equitable estoppel when the attempt constitutes an effort to prevent an employee from suing. "To raise this inference, a plaintiff must show something more–for instance, an offer to rehire coupled with a request not to file suit." *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1212 (7th Cir. 1993). Other examples of this "something more" include an employer promising not to plead the statute of limitations as a defense to litigation or the presentation by an employer to an employee of forged documents stating a reason for dismissal. *See Cada*, 920 F.2d at 450-451; *see also Vaught*, 745 F.2d at 412 (differing explanations for employee's demotion and promise of an investigation are not sufficient to equitably estop defendant from raising defense of untimely filing).

12

Within the first 300 days, Amtrak failed to provide Revolinski with detailed information about his termination. Both sides agree, however, that Amtrak has no duty to provide such information. Additionally, failing to provide such information does not in itself meet the standard necessary for equitable estoppel. Even if a failure to provide information were sufficient, Revolinski must still provide evidence of Amtrak's improper purpose or knowledge of the deceptive nature of its conduct. *See Mull*, 784 F.2d at 292.

There is no evidence to demonstrate that Amtrak acted improperly in its initial handling of Revolinski's termination. Amtrak states that Revolinski's poor attendance was at least one reason for his termination. Soon after his termination, Revolinski had all the information necessary to file charges with the EEOC. Any conduct or representations taking place after the filing period has run, such as the conduct referenced above, cannot be reasonably relied on for purposes of equitable estoppel. *See Vaught*, 745 F.2d at 412.

Even assuming that the filing period began to run in December 2007, Revolinski must still demonstrate that Amtrak's actions subsequent to December 2007, reflect an improper purpose or that Amtrak had actual or constructive knowledge of the deceptive nature of its conduct. In the months that followed, Amtrak met with Revolinski through its Human Resources Department and DRO (DPFOF ¶¶ 84-90.) Revolinski viewed his personnel file, which contained what he considered errors. (Compl. ¶ 20.) Although Amtrak may not have been particularly responsive, it provided Revolinski with access to its personnel files, direct supervisors and internal review procedures. Thus, Revolinski had all the information necessary for his purposes with no evidence of a "deliberate design" or actions Amtrak should "unmistakably have understood" would cause Revolinski's delay in filing.

Revolinski asserts that, because Amtrak failed to tell him of its discriminatory motives for his termination, equitable estoppel should cause the limitations period to be tolled. Revolinski, like the plaintiff in *Cada*, merges the substantive wrong and the tolling doctrine. *See Cada*, 920 F.2d at 450-451. Revolinski has put forth no evidence that rises to the level of fraudulent concealment as exemplified by prior case law. Even assuming Amtrak did not act diligently, nothing in its conduct rises to the level of "deliberate design" or conduct that the defendant "should have unmistakably" believed would delay the plaintiff in his filing. *See Mull*, 784 F.2d at 292. Therefore, Revolinski's argument that the filing period should be tolled based on the doctrine of equitable estoppel fails.

## B. Revolinski's Claim Under the RLA

Revolinski claims that Amtrak's termination violated his collective bargaining right under the RLA.[1] Section 152, Fourth of the RLA gives railway workers the right to "organize and bargain collectively through representatives of their own choosing." 45 U.S.C. § 152. Although not expressly statutorily-defined, claims arising under Section 152, the Fourth of the RLA are governed by a six-month statute of limitations period under Section 10(b) of the National Labor Relations Act. 29 U.S.C. § 160(b); *Robinson v. Pan Am. World Airlines, Inc.*, 777 F.2d 84, 86-89 (2d Cir. 1985).

Generally, the six-month limitations period begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir. 1983). Amtrak notified Revolinski of his termination on December 7, 2006. When Amtrak terminated Revolinski's employment, Amtrak terminated his right to collectively bargain. Because on his termination date Revolinski knew of the acts

---

[1] Although Revolinski asserts a violation of the RLA in his amended complaint, he states in his response to Amtrak's motion for summary judgment that "Plaintiff takes no position on the Railway Labor Act claims and leaves Defendant to its proofs on that portion of its motion."

constituting the alleged violation, the statute of limitations period began to run on December 7, 2006.

Based on the statute of limitations, Revolinski should have proceeded on his RLA claim on or before June 7, 2007. Instead Revolinski filed this lawsuit on December 16, 2008, and did not allege an RLA claim in his initial complaint. Subsequent to filing this lawsuit, during October of 2009, Revolinski amended his complaint to include an RLA claim. As with his ADEA and ADA claims, Revolinski asserts that equitable estoppel and equitable tolling apply to toll the limitations period. For the same reasons that apply to Revolinski's ADA and ADEA claims, neither doctrine will save Revolinski's RLA claim.

On the date of his termination, Revolinski had all the information that he needed in order to pursue his RLA claim. Specifically, he knew that Amtrak terminated his employment, which therefore barred access to union membership. Unlike his discrimination claims, Revolinski cannot reasonably argue he could have found "essential information bearing on his claim" at a later date. *Cada*, 920 F.2d at 452. Further, Revolinski does not provide any information, discovered subsequent to his termination, that supports his RLA claim. Even if Revolinski were to suggest that information necessary for this claim was missing at the date of his termination, he would have received all such information from Amtrak bearing on his claim by spring of 2008 (Revolinski's last substantial contact with Amtrak before filing suit). Commencing the running of the limitations period in the spring of 2008 would still lead this court to conclude that Revolinski's filing was untimely, because Revolinski filed suit more than six months after gaining this additional information.

Tolling of the statute of limitations period does not guarantee a whole new limitations period. Instead, equitable tolling offers a reasonable extension of the limitations period. *Hentosh*, 167 F.3d at 1174. As discussed above, absent some source for delay, this extension should be measured in weeks,

not months. *Thelen*, 64 F.3d at 268. Revolinski has not explained a cause for delay. Assuming Revolinski did not receive essential information bearing on his claim until spring 2008, and equitable tolling offered a full extension of the limitations period, Revolinski's RLA claim would still be time-barred. Therefore, Revolinski's RLA claim cannot be saved by equitable tolling and his filing must be considered untimely.

With regard to equitable estoppel, Revolinski may be able to show actual and reasonable reliance on Amtrak's representations. However, Revolinski has failed to demonstrate "improper purpose on the part of the defendant or the defendant's actual or constructive knowledge of the deceptive nature of its conduct." *Mull*, 784 F.2d at 292 (internal quotations omitted) (quoting *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981)). Because equitable estoppel does not turn on any act of the plaintiff, analysis of Revolinski's equitable estoppel argument with respect to his RLA claim mirrors that of Revolinski's equitable estoppel claim with respect to both the ADEA and ADA claims. Revolinski has not put forth evidence that is sufficient for the court to find improper conduct or knowledge of the deceptive nature of Amtrak's conduct. Without such evidence, the statute of limitations period cannot be tolled on equitable estoppel grounds. Therefore, Revolinski's argument that equitable estoppel saves his otherwise untimely filing fails and Revolinski's RLA claim must be dismissed as time-barred.

### C. Revolinski's Claim Under the Rehabilitation Act

To establish a prima facie case of discrimination under the Rehabilitation Act[2], a plaintiff must

---

[2] As mentioned in the court's April 16, 2010 Decision and Order, the Rehabilitation Act and the Americans with Disabilities Act were amended significantly, with an effective date of January 1, 2009. Because this case pre-dates the amendments, the court will apply the statute, regulation, and laws in place prior to the amendment. *See Fredericksen v. UPS*, 581 F.3d 516, 521 n.1 (7th Cir. 2009) (finding retroactive application of the amendments inappropriate).

establish that he (1) suffers from a disability[3] as defined by the Rehabilitation Act; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) has suffered an adverse employment decision because of the disability. *Scheerer v. Potter*, 443 F.3d 916, 918 (7th Cir. 2006).[4] To meet the first element, a plaintiff must demonstrate that he (1) has a physical or mental impairment which substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 45 C.F.R. § 84.3(j)(1).

Revolinski argues that Amtrak violated the Rehabilitation Act by discriminating against him due to his obesity and gout, each of which he claims qualifies as a disability under the Rehabilitation Act. Revolinski further argues that, if obesity and gout do not qualify as disabilities under the Rehabilitation Act, then Revolinski is still entitled to relief because he was "regarded as" having a disability due to his weight. For the reasons discussed below, the court finds that Revolinski is not disabled within the meaning of the Rehabilitation Act and will therefore grant Amtrak's motion for summary judgment with regard to this issue.

Under the first prong of the disability analysis, a person is disabled if he suffers from an impairment that substantially limits one or more major life activities. An "impairment" is defined as:

> (A) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin;

---

[3] Although the Rehabilitation Act uses the term "handicap," the court will use the term "disability" to refer to impairments that substantially limit one or more major life activities.

[4] As previously discussed by the parties, and by this court in its April 16, 2010 Decision and Order, the Seventh Circuit utilizes cases under the ADA in evaluating discrimination claims under the Rehabilitation Act due to the statutes' similar prima facie requirements. *Scheerer v. Potter*, 443 F.3d at 919. The court will therefore utilize cases discussing claims under both the Rehabilitation Act and the ADA.

and endocrine; or

> (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

45 C.F.R. § 84.3(j)(2)(I). Additionally, "major life activities" include caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 45 C.F.R. § 84.3(j)(2)(ii).

"[O]besity, except in rare cases where the obesity is caused by a physiological disorder, is not a 'physical impairment' within the meaning of [the Rehabilitation Act], but instead is considered a 'normal' characteristic under the statute." *Zarek v. Argonne Nat'l Laboratory*, No. 97 C 6964, 1998 WL 547288, at *3 (N.D. Ill. Aug. 27, 1998). *See also Hazeldine v. Beverage Media, Ltd.*, 954 F. Supp. 697, 703 ("[T]he interpretive guidelines for the ADA indicate that obesity should not be considered a disabling impairment, 'except in rare circumstances.'"). However, "morbid obesity"[5] can, in some circumstances, be a physical impairment under the Rehabilitation Act. *See Id.* (a reasonable jury could find obesity to be a physical impairment where plaintiff is also diagnosed with hypertension and coronary insufficiency).

Revolinski argues that his morbid obesity is a physical impairment within the meaning of the Rehabilitation Act. Indeed, at the time of his employment with Amtrak, Revolinski weighed 426 pounds, clearly meeting the definition for morbid obesity. However, even assuming that Revolinski's obesity qualifies as a physical impairment, he is still unable to demonstrate that his obesity substantially limits one or more major life activities. Revolinski asserts that he is substantially limited in his ability to "catch his breath, climb stairs, walk and find work . . . ." (Pl.'s Resp. 7.) To be sure, Revolinski has

---

[5] "Morbid obesity" is defined as weighing twice the person's optimal weight or weighing more than 100 pounds over his optimal weight. *EEOC v. Texas Bus Lines*, 923 F. Supp. 965, 967 (S.D. Tex. 1996).

18

demonstrated that he experiences some limits on major life activities as a result of his weight. The critical issue, however, is whether Revolinski has offered sufficient evidence upon which a reasonable jury could find that his obesity substantially limits one of these major life activities.

"Substantially limited" means "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." *EEOC v. Sears Roebuck & Co.*, 417 F.3d 789, 800 (7th Cir. 2005). *See also Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006) (to show substantial limitation as part of a prima facie Rehabilitation Act claim, employee must demonstrate that he was either prevented or severely restricted from major daily tasks, such as walking, eating, sleeping, or sexual reproduction, during the pertinent time period). "To survive summary judgment, the plaintiff must provide specific facts establishing that there is a genuine issue of material fact as to whether he is substantially limited in a major life activity." *Id.*

For example, in *Hazeldine*, 954 F. Supp. at 703, the plaintiff claimed that her obesity affected major life activities by pointing to evidence that she could not shovel snow or carry objects weighing ten pounds or more, that she was unable to kneel or bend, and that she would be out of breath and needed to rest after doing housework, raking leaves, climbing stairs, or walking more than five city blocks. The court held that "[w]hile it is reasonable to conclude from the evidence that plaintiff's obesity *affects* her ability to engage in everyday activities, these allegations are not sufficient to support the conclusion that her weight *substantially limits* a major life activity." *Id. See also Nedder v. Rivier College*, 944 F. Supp. 111, 115–18 (D.N.H. 1996) (finding insufficient evidence to invoke protection of the ADA despite plaintiff being classified as fifty percent disabled due to her struggles with housework, shopping, walking,

bending, and getting into and out of the car).

Similar to the plaintiff in *Hazeldine*, Revolinski asserts some limitations on his major life activities of breathing, walking, climbing stairs and working. However, he does not demonstrate through the record that he is significantly restricted as compared to an average person in the general population. In fact, Revolinski agrees that "[w]hile employed by Amtrak, Plaintiff's weight never affected his ability to work, perform manual tasks, care for himself, perform any daily tasks or perform the essential functions of the Assistant Conductor position." (DPFOF ¶ 109.) Additionally, Revolinski points to no other admissible evidence that can create a genuine issue of material fact with regard to his limitations. Without more, the court is unable to find that a reasonable jury could determine that Revolinski is substantially limited in any major life activity. Thus, the court finds that Revolinski cannot base his discrimination claim on an actual disability related to Revolinski's obesity.

Revolinski's assertion that gout is a disability fails as well. Revolinski is unable to point to any evidence that his gout substantially limits a major life activity. In fact, as with his obesity, Revolinski admits that "at the time Plaintiff worked for Amtrak, his gout never affected his ability to work, perform manual tasks or care for himself and did not affect his ability to perform the essential functions of the Assistant Conductor position." (DPFOF ¶ 100.) He also admits that when experiencing gout, the episodes last only a couple of days, can be treated with Ibuprofen, and are confined to his wrists and feet. (DPFOF ¶¶ 95–98.) The information provided fails to demonstrate that Revolinski's gout qualifies as a disability under the Rehabilitation Act. Thus, the court finds that Revolinski's claim that Amtrak discriminated against him based on the disability of gout fails.

However, Revolinski argues that he is still entitled to relief under the Rehabilitation Act because

he was "regarded as" having a disability by Amtrak due to his weight.[6]  To satisfy this prong of the

Rehabilitation Act's definition of disability, Revolinski must offer evidence indicating that Amtrak

believed that he had an impairment that substantially limited one or more major life activities.  45 C.F.R.

§ 84.3(j)(2)(iv); *see also Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2005).  Amtrak

had to "believe either that [Revolinski had] a substantially limiting impairment that [he did] not have or

that [he had] a substantially limiting impairment when, in fact, the impairment [was] not so limiting."

*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999).

To establish a claim under the "regarded as" prong with regard to obesity, a plaintiff must

demonstrate that "the employer believes that [the plaintiff] suffers from a physiological disorder that

substantially limits his major life activities."  *Zarek*, 1998 WL 547288, at *3 (citing *Francis v. City of

Meridien*, 129 F.3d 281, 286 (2d Cir. 1997)).  Revolinski must therefore establish that Amtrak regarded

Revolinski's obesity as caused by a physiological disorder that substantially limits a major life activity.

*Id*.  It is insufficient to merely allege that Amtrak regarded him as obese.  *Id*.

Revolinski supports his argument that Amtrak regarded him as disabled by stating that "[o]ne time

in the general business office in front of others, Pescevic told Plaintiff that it wasn't [Pescevic's] fault

that Plaintiff was too f'ing fat and old to fit into Amtrak's uniforms."  (PPFOF ¶ 56.)  However,

Revolinski does not point to any evidence that Pescevic considered Revolinski's weight to be caused by

a physiological disorder that substantially limits major life activities.  In fact, Revolinski fails to cite any

evidence that Pescevic or others at Amtrak believed that Revolinski's weight, considered by itself,

somehow limited Revolinski's ability to perform his job or perform other daily tasks.  Due to the lack

of evidence, a reasonable jury could not find that Amtrak regarded Revolinski's weight as a disability

---

[6] Revolinski does not argue that Amtrak regarded him as disabled due to gout.

under the Rehabilitation Act. Therefore, Revolinski's claim under the "regarded as" prong fails as well.

Revolinski has failed meet his threshold burden of establishing that he is disabled under the Rehabilitation Act. The court will therefore grant Amtrak's motion for summary judgment with regard to Revolinski's claim of discrimination under the Rehabilitation Act.

## IV. CONCLUSION

Revolinski's claims under the ADA, ADEA, and RLA are time-barred and must be dismissed by the court. Additionally, Revolinski's claim of discrimination based on a disability under the Rehabilitation Act fails as a matter of law. The court will therefore grant Amtrak's motion for summary judgment in its entirety.

**NOW THEREFORE IT IS ORDERED** that Amtrak's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

**SO ORDERED** this 24th day of May 2011, at Milwaukee, Wisconsin.

BY THE COURT:

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge